**SIGNED THIS: December 29, 2009**

_____
THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ERIC R. MCCREARY, | ) | No. 09-81743 |
| | ) | |
| Debtor. | ) | |

### OPINION

This matter is before the Court after trial on the issues of confirmation of a Chapter 13 plan and whether the case was filed in good faith.

### FINDINGS OF FACT

1. The Debtor, Eric R. McCreary (DEBTOR), a divorced person with no dependents, filed his Chapter 13 petition on June 4, 2009.

2. According to his Statement of Financial Affairs, the DEBTOR'S only sources of income are social security, a pension and an annuity. He received $28,000 from those sources in 2007 and $29,017 in 2008.

3. According to his schedules, he owns a house in Peoria valued at $51,000 encumbered by a mortgage with a balance of $37,000. He claims a $15,000 homestead exemption.

4. At the time of the filing, the DEBTOR'S personal property consisted of bank deposits of $9,000, furniture valued at $1,500, a State Farm annuity valued at

$70,000, a Mitsubishi pension, and three vehicles, a 1999 Cadillac Eldorado valued at $6,000, a 2004 Cadillac SRX valued at $16,000, and an inoperable 1987 Kawasaki motorcycle valued at $200. The '04 SRX was fully encumbered by a lien to Citizens Bank.

5. The DEBTOR claimed the State Farm annuity as fully exempt pursuant to 735 ILCS 5/12-704. The DEBTOR'S ex-wife, Sylvia McCreary (SYLVIA), objected to this exemption claim as improper, but subsequently conceded the exemption and withdrew her objection.

6. The DEBTOR scheduled no priority creditors and only two unsecured creditors: Methodist Medical Center holding a claim of $800 and SYLVIA holding a claim of $51,000.

7. DEBTOR'S initial Schedule I lists total monthly income of $2,454. The initial Schedule J lists monthly expenses of $2,254 yielding a net monthly disposable income of $200.

8. As reflected on Form 22C, the DEBTOR, based on his income, is under-median and is subject to an applicable commitment period of 3 years.

9. With his petition, the DEBTOR filed a Chapter 13 Plan proposing payments of $200 per month for 36 months, proposing to pay his mortgage and car loan outside the plan, proposing to pay his attorney a fee of $2,000, with unsecured creditors to be paid ratably the sum of $4,480.

10. SYLVIA began a divorce proceeding against the DEBTOR in 2006 and the marriage was dissolved on August 21, 2006. As part of a property settlement, money judgments were entered by the divorce court in favor of SYLVIA and against the DEBTOR on May 11, 2009, in the amount of $45,329.63 and $6,566.11 respectively.

11. In enforcement of those judgments, SYLVIA served non-wage garnishments on three lending institutions at which DEBTOR had accounts. The lenders froze the accounts.

12. On July 7, 2009, the DEBTOR moved the Bankruptcy Court to enjoin SYLVIA from pursuing the garnishments and for an order for the lenders to unfreeze the accounts. Ultimately, the motion was resolved by agreement whereby the frozen funds were disbursed $2,163.32 to DEBTOR and $6,998.82 to SYLVIA.

13. SYLVIA objected on the grounds of bad faith, alleging that the DEBTOR'S purpose for the Chapter 13 filing was to avoid paying SYLVIA'S claim, which would be nondischargeable in a Chapter 7 case.

14. An evidentiary hearing was held on November 17, 2009. The DEBTOR was the only witness.

15. He testified that the reason he sought bankruptcy protection was because his bank accounts were frozen by SYLVIA'S garnishment.

16. The DEBTOR admitted that he had not paid any portion of the judgment to SYLVIA prior to the garnishments.

17. He acknowledged having only two unsecured creditors and two secured creditors. He admitted that one of those secured creditors, Citizens Automobile Finance, Inc., repossessed the 2004 Cadillac SRX after the filing. That creditor obtained stay relief by order entered October 14, 2009.

## ANALYSIS

At trial, SYLVIA conceded that the money judgments entered by the divorce court are not Domestic Support Obligations as defined in Section 101(14A) since those debts are not in the nature of alimony, maintenance or support. Rather, they are in the nature of a property settlement. As such, the judgment debts are within the purview of Section 523(a)(15), not Section 523(a)(5). Those debts are thus dischargeable in this Chapter 13 case if the DEBTOR receives a full compliance discharge, *see* 11 U.S.C. § 1328(a), although they would not be dischargeable in a Chapter 7 case, 11 U.S.C. § 727(b).

SYLVIA contends that the petition was not filed in good faith in violation of Section 1325(a)(7) and that the plan is not proposed in good faith in violation of Section 1325(a)(3). Her position centers around the fact that she is one of only two unsecured creditors and she holds 98% of the total amount of unsecured indebtedness. She argues that the predominant purpose of the case is to discharge her claims which are not dischargeable in a Chapter 7 case. She also contends that the proposed distribution to unsecured creditors under the plan is so minimal as to be not meaningful.

Prior to the enactment of the Bankruptcy Abuse and Consumer Protection Act of 2005, a debtor's lack of good faith in filing a bankruptcy petition was sufficient cause for dismissal or conversion of the case. 11 U.S.C. § 1307(c). *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir. 1992). The majority of courts analyzing the issue since the addition of Section 1325(a)(7), which requires a finding that the petition was filed in good faith as a condition to plan confirmation, have applied those same basic standards. *See In re Tomer*, 2009 WL 2029798 (W.D.Va. 2009); *In re Shafer*, 393 B.R. 655 (Bankr.W.D.Wis. 2008). While a determination that a petition has not been filed in good faith would likely result in dismissal, a determination that a plan has not been filed in good faith would, in most cases, result in an opportunity to propose another plan. Those determinations are largely independent of one another. Here, the DEBTOR has proposed a more generous plan, which SYLVIA may not find objectionable, as the main focus of the inquiry with respect to the Amended Plan is whether the DEBTOR is contributing all of his disposable income.

Two days after the trial, the DEBTOR filed Amended Schedules I and J reflecting decreased monthly expenses because of the repossession of the 2004 Cadillac SRX resulting in increased monthly disposable income of $350. An Amended Plan was also filed proposing increased payments of $350 per month for 36 months. The filing of the Amended Plan renders SYLVIA'S objection to the initial plan under Section 1325(a)(3) moot. Therefore, the Court will address only whether the DEBTOR filed his petition in good faith.

SYLVIA relies upon *Matter of Smith,* 848 F.2d 813 (7th Cir. 1988), which is the oldest of the three Seventh Circuit opinions that address the issue of good faith. The most recent of the three is *In re Smith,* 286 F.3d 461 (7th Cir. 2002), where the objecting creditor pointed

to the debtor's prepetition fraudulent conduct that gave rise to the debt as evidence of bad faith. The court reiterated its earlier holding, however, "that simply availing oneself of the more liberal provisions of Chapter 13 to discharge a debt that is not dischargeable in Chapter 7 is not sufficient to constitute bad faith" by a debtor in seeking Chapter 13 relief. 286 F.3d at 465-66 (citing *Smith, supra,* 848 F.2d 813 at 819).

The second most recent Seventh Circuit opinion is *Matter of Love,* 957 F.2d 1350 (7th Cir. 1992) where the court discussed the distinction between the good faith standard for filing a Chapter 13 petition and the good faith requirement that applies to a plan. The court began by determining that the good faith determination with respect to a Chapter 13 petition is a fact intensive inquiry that requires an examination of the totality of the circumstances. *Id.* at 1355. Noting that because dismissal is a harsh remedy, bankruptcy courts should be more reluctant to dismiss a petition for lack of good faith than to reject a plan for lack of good faith, *Id.* at 1356, the court focused the inquiry on whether the filing is fundamentally fair to creditors in a manner that complies with the spirit of the Bankruptcy Code provisions, *Id.* at 1357. Both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose are relevant. *Id.* at 1357.

The court identified the following nonexclusive list of factors:

1. The nature of the debt.
2. Whether the debt would be nondischargeable in Chapter 7.
3. The timing of the petition.
4. How the debt arose.
5. The debtor's motive in filing the petition.
6. How the debtor's actions affected the creditors.
7. The debtor's treatment of creditors both before and after the petition was filed.
8. Whether the debtor has been forthcoming with the court and creditors.

The case cited by SYLVIA, *Matter of Smith,* 848 F.2d 813, is limited to the issue of whether a plan is proposed in good faith, as subsequently pointed out by the Seventh Circuit. *See Love, supra,* 957 F.2d at 1354 n.2. As such, that opinion does not offer guidance on the issue involving the good faith of the petition itself.

Applying the *Love* factors, the Court first focuses on the debt. The DEBTOR'S debt to SYLVIA is an ordinary property settlement entered in a divorce proceeding. There is nothing suspicious about how the debt arose. There is no allegation of misconduct by the DEBTOR. The first and fourth factors favor the DEBTOR. However, the debt would be nondischargeable in Chapter 7, so the second factor weighs against the DEBTOR.

The DEBTOR admits that he filed for relief because of the action taken by SYLVIA to garnish his bank accounts. This is neither unusual nor reprehensible. Many debtors seek bankruptcy protection because of collection activity taken or threatened by creditors. The purpose of the automatic stay is to stop such activity. The Court sees nothing wrong with the DEBTOR availing himself of the rights and remedies afforded by the Bankruptcy Code. This is not a situation involving multiple filings and there is no allegation that the DEBTOR somehow misled or baited SYLVIA into incurring substantial attorney fees or court costs. So the third, fifth and sixth factors do not indicate bad faith.

There is no allegation of misrepresentation by the DEBTOR. The DEBTOR has amended Schedules I and J, as well as his plan, but SYLVIA does not claim that he knowingly or intentionally scheduled false information. Neither does SYLVIA allege any improper dealings with her. Thus, factors six, seven and eight do not evidence a lack of good faith.

SYLVIA'S most vigorous argument has to do with the paucity of creditors. While SYLVIA is not the DEBTOR'S only creditor, she is one of only four, including his mortgagee with whom he remains current, and is one of only two unsecured creditors, the second of which holds a small claim. This argument goes to the broader issue of whether the filing is fundamentally fair and consistent with the spirit and purpose of the Bankruptcy Code.

A debtor is not required to have a specific minimum number of unsecured creditors. *In re Klevorn,* 181 B.R. 8, 11 (Bankr.N.D.N.Y. 1995). The pertinent inquiry is whether there is a genuine need for bankruptcy relief and an ability to complete a Chapter 13 repayment plan. *Id.*

It is evident from the DEBTOR'S schedules and testimony that he is not well off. Retired, his monthly income is $2,142 or $25,704 annually. With the loss of the 2004 vehicle, his expenses are $1,792 per month. He has no nonexempt equity in his house. The 1999 vehicle, which he owns free and clear, at a value of $6,000, is the only asset in which he has nonexempt equity. None of his expenses appears unreasonable. The DEBTOR'S disposable income of $350 per month represents the sole source of funding available to pay extraordinary debts such as those owed to SYLVIA. Given the large amount of SYLVIA'S judgments in relation to the DEBTOR'S disposable income, there is no question that the DEBTOR has a legitimate need for bankruptcy relief because of his inability to pay the judgments.[1] It also appears that the DEBTOR has the ability to fund a plan with payments of $350 per month. His Amended Plan proposes as much.

---

[1] As of the date of filing, interest at the Illinois judgment rate of 9% was accruing on the judgments at the rate of $390 per month.

There is precedent for dismissal of a Chapter 13 petition for lack of good faith involving a two party dispute. In *In re Virden,* 279 B.R. 401 (Bankr.D.Mass. 2002), the Chapter 13 debtor had only one significant debt owed to a judgment creditor in the amount of $54,039.64 arising out of the debtor's embezzlement. Dismissing the petition for lack of good faith, the court found that the debtor had the financial wherewithal to pay the debt but engaged in a pattern of prepetition and postpetition activities that evidenced an intent to thwart the creditor and avoid paying the debt. The court concluded that the debtor's filing was motivated by a desire to avoid paying the creditor rather than by an inability to pay.

*Virden* is distinguishable. The DEBTOR has been forthright in his testimony at trial and with respect to his schedules. He entered into a stipulation to pay the nonexempt portion of his garnished bank accounts to SYLVIA. He relinquished the 2004 Cadillac thereby increasing his proposed plan payments. Although his debt to SYLVIA will not be paid in full through the Amended Plan, she will receive substantial funds.

This Court determines that the DEBTOR'S petition was filed in good faith and should not be dismissed. The Clerk is directed to send the Amended Plan out on objection notice. If any objections are filed, a hearing will be scheduled.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###